ALLEGHENY COUNTY SANITARY
AUTHORITY, et al., Plaintiffs,

v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY (EPA), et
al., Defendants.

Civ. A. No. 82–2534.

United States District Court,
W.D. Pennsylvania.

Feb. 17, 1983.

Robert P. Casey, Dilworth, Paxson, Kalish & Kauffman, Scranton, Pa., David Cash-

man, Cauley, Birsic & Conflenti, Pittsburgh, Pa., for ALCOSAN.

Dean Dunsmore, Atty., Environmental Defense Section, Land & Natural Resources Div., Washington, D.C., Robert Perry, Gen. Counsel, Sylvia Horwitz, United States E.P.A., Washington, D.C., John D. Cooper, U.S.E.P.A., Region III, Philadelphia, Pa., for United States Environmental Protection Agency (EPA).

Ward T. Kelsey, Pa. Dept. of Environmental Resources, Pittsburgh, Pa., Robert W. Adler, Asst. Counsel, Harrisburg, Pa., for Pennsylvania Dept. of Environmental Resources (DER).

Allen Warshaw, James J. Kutz, Alton P. Arnold, Jr., Deputy Attys. Gen., Harrisburg, Pa., for Com. of Pa.

Gary Hoffman, Chief Counsel, Thomas Rutter, Jr., Associate Counsel, Goehring, Rutter & Boehm, Pittsburgh, Pa., for Legislative Reference Bureau.

John Molnar, Cassebaum, McFall & Molnar, Bangor, Pa., for Bangor Borough Authority.

Alvin E. Dillman, Jr., Dillman & Schuchert, Pittsburgh, Pa., for Hampton Tp. Sanitary Authority.

J. Scott Maxwell, Hamburg, Rubin, Mullin & Maxwell, Lansdale, Pa., for Horsham Sewer Authority.

August C. Damian, Damian & DeLuca, Pittsburgh, Pa., for Municipality of Penn Hills.

Timothy P. O'Reilly, McArdle, Caroselli, Spagnolli & Beachler, Pittsburgh, Pa., for Tp. of South Fayette.

Sherman H. Siegel, Washington, Pa., Victor K. Lynch, Lynch & Lynch, Pittsburgh, Pa., for South Strabane Tp. Sanitary Authority.

David Wm. Bupp, Blakey, Yost, Bupp & Kilgore, York, Pa., for York City Sewer Authority.

Raymond L. Hovis, Stock & Leader, York, Pa., for York Tp. Water and Sewer Authority.

Raymond J. Sobota, Cardoni, Maguire & Sobota Associates, Wilkes-Barre, Pa., for Wyoming Valley Sanitary Authority.

John R. White, Campbell & White, Gettysburg, Pa., for Borough of Littlestown.

James A. Holtzer, York, Pa., for Dover Tp. Sewer Authority.

Paul A. Lundeen, Rhoads, Sinon & Hendershot, Harrisburg, Pa., D. Bruce Cahilly, Coudersport, Pa., for Borough of Galeton and Galeton Borough Authority.

John C. Sullivan, Nauman, Smith, Shissler & Hall, Harrisburg, Pa., for Harrisburg Sewerage Authority.

Robert H. Long, Jr., Paul A. Lundeen, John B. Munson, Harrisburg, Pa., Louis J. Farina, Blakinger, Grove & Chillas, Lancaster, Pa., for City of Lancaster Sewer Authority.

Mark A. Aronchick, Marguerite R. Goodman, Philadelphia, Pa., for City of Philadelphia.

Robert H. Long, Jr., Paul A. Lundeen, John B. Munson, Harrisburg, Pa., Donald E. Albright, Hanover, Pa., for Borough of Hanover.

## MEMORANDUM OPINION

TEITELBAUM, Chief Judge.

### Introduction

Allegheny County Sanitary Authority (ALCOSAN) brought this action against the United States Environmental Protection Agency (EPA) and certain officials of that agency (collectively referred to as the federal defendants) and the Pennsylvania Department of Environmental Resources (DER) and certain officials of that agency [1] (collectively referred to as the state defendants) challenging the administration of the program under which federal construction grants are awarded to publicly owned sewage treatment works.

---

1. Also named as defendants were the entities responsible for the publication of the list in dispute.

Title II of the Federal Water Pollution Control Act (FWPCA), 33 U.S.C. § 1281 *et seq.*, establishes a program of federal grant assistance to publicly owned sewage treatment works for the construction of sewage treatment plants and related facilities. Federal funds are allotted to each state and each state then determines how its allotment is to be distributed by establishing a system for ranking, in order of priority, the need for construction of treatment works. The method by which each state establishes this ranking is called the "priority system" and the list of ranked projects is called the "priority list". It appears that placement on Pennsylvania's priority list is determined by such factors as priority points, segmented status, anticipated date of certification to EPA, and anticipated funding. ALCOSAN has 70 priority points and was not included on Pennsylvania's Fiscal Year (FY) 1983 project priority list.

ALCOSAN alleges the administration of the construction grants program has been improper in three respects: 1) Pennsylvania's priority system was not revised to conform to the 1981 amendments to the FWPCA and no public hearing was held on the decision not to revise the system; 2) ALCOSAN was not ranked as a "fundable" project on Pennsylvania's expanded FY 1981 project priority list and no public hearing was held on the decision to rank certain projects as "fundable"; 3) Philadelphia is accorded preferred status under Pennsylvania's "segmenting" regulation. ALCOSAN contends that had Pennsylvania's system been revised to take into account reduced Congressional appropriations and had ALCOSAN been ranked as "fundable" and had Philadelphia not been accorded preferred status, ALCOSAN would have received a grant. ALCOSAN seeks declaratory and injunctive relief, including an injunction *pendente lite*. The defendants have responded with motions to dismiss. For the reasons set forth below, the claims against the state defendants will be dismissed,

Count 11 against the federal defendants will be dismissed, but Counts 1, 2 and 10 against the federal defendants will not be dismissed.

### The motions to dismiss

The complaint is 12 counts. Count 1 alleges a denial of equal protection by the state and federal defendants. Count 2 alleges a denial of due process by the state and federal defendants. Count 3 alleges a deprivation of rights secured by the Constitution and the FWPCA in violation of 42 U.S.C. § 1983 by the state defendants.[2] Counts 4 and 6–9 allege violations of the FWPCA and its implementing regulations by the state defendants. Count 5 alleges the misapplication of a state regulation by the state defendants. Count 10 alleges violations of the FWPCA by the federal defendants. Count 11 alleges violations of the Administrative Procedure Act by the federal defendants. Count 12 alleges a denial of due process by the state defendants.

Jurisdiction is alleged under the "citizen suit" provision of the FWPCA, 33 U.S.C. § 1365; the federal question statute, 28 U.S.C. § 1331; the jurisdictional grant for "civil actions arising under any Act of Congress regulating commerce," 28 U.S.C. § 1337; the jurisdictional grant for civil rights actions, 28 U.S.C. § 1343(3); the federal mandamus statute, 28 U.S.C. § 1361; and the doctrine of pendent jurisdiction.

 The defendants urge that abstention is appropriate because ALCOSAN has raised the same issues in a pending state administrative proceeding. After learning that it was not included on Pennsylvania's FY 1983 project priority list, ALCOSAN filed an appeal with the Pennsylvania Environmental Hearing Board. ALCOSAN has informed the Court that it is requesting a stay of the Board proceedings pending the outcome of this action. ALCOSAN contends abstention is inappropriate because the federal defendants and other publicly

---

**2.** The substance of Count 3, paragraphs 152–154, was included in the complaint although the phrase "Count III Deprivation of Rights Secured by the Constitution and Laws of the United States in Violation of 42 U.S.C. § 1983" was inadvertently omitted. The Court has treated the complaint as though the caption of Count 3 were present.

owned treatment works which may be affected by the outcome are not parties to the Board proceeding. Because the Court has concluded that the only claims properly before it relate to the duties of the federal defendants under federal law, considerations of federalism underlying the doctrine of abstention are not present. Accordingly the Court will not abstain.

### The state defendants

The federal claims against the state defendants fall into two groups: Constitutional violations and FWPCA violations. The state defendants move to dismiss the Constitutional claims contending a municipality may not assert a violation of its Constitutional rights by its parent state. The state defendants move to dismiss the FWPCA claims contending there is no express or implied cause of action against them under the FWPCA.

ALCOSAN is a municipal authority organized under the Pennsylvania Municipal Authorities Act, 53 P.S. § 301 *et seq.* As such, ALCOSAN has no rights under the Constitution which it may invoke in opposition to the will of its creator. *Williams v. Mayor and City Council of Baltimore,* 289 U.S. 36, 40, 53 S.Ct. 431, 432, 77 L.Ed. 1015 (1933). This principle applies to claims against state officials as well. *Northwestern School District v. Pittenger,* 397 F.Supp. 975, 977–978, 979 (W.D.Pa.1975). Accordingly those portions of Counts 1 and 2 which allege that the state defendants have violated ALCOSAN's Constitutional rights will be dismissed, that portion of Count 3 which alleges that the state defendants have deprived ALCOSAN of rights secured by the Constitution in violation of 42 U.S.C. § 1983 will be dismissed, and Count 12 will be dismissed in its entirety.

The FWPCA authorizes citizens to bring two types of suits. Under section 505(a)(1) a citizen may sue any person who is discharging pollutants in violation of an applicable effluent limitation. 33 U.S.C. § 1365(a)(1). Under section 505(a)(2) a citizen may sue the *Administrator of the EPA* for failure to perform a non-discretionary duty. 33 U.S.C. § 1365(a)(2). The FWPCA contains *no* provision expressly authorizing a citizen to sue *any person* for improper administration of the FWPCA construction grant program. Lacking express statutory authorization to assert claims of improper administration of the FWPCA construction grant program against the state defendants, ALCOSAN contends such claims arise under the laws of the United States and are cognizable under 28 U.S.C. § 1331.

The state defendants oppose ALCOSAN's attempt to imply a cause of action under the FWPCA and rely on *Middlesex County Sewerage Authority v. National Sea Clammers Association,* 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981). Predictably, ALCOSAN contends *Sea Clammers* is distinguishable.

*Sea Clammers* concerned claims by commercial fishermen that state and federal governmental entities discharged sewage and other wastes into the Hudson River in violation of the FWPCA and thereby caused damage to ocean fishing grounds.[3] The district court granted summary judgment for the defendants, holding that the plaintiffs failed to satisfy the notice required for a citizen suit and could not maintain a FWPCA claim under federal question jurisdiction. The United States Court of Appeals for the Third Circuit reversed, holding plaintiffs had an implied cause of action under the FWPCA. The Supreme Court granted certiorari and held there was no implied cause of action under the FWPCA. The Court further determined that the FWPCA foreclosed a private cause of action under 42 U.S.C. § 1983, *see* discussion at p. 428, *infra.*

ALCOSAN contends *Sea Clammers* is distinguishable. In *Sea Clammers* the plaintiffs alleged the state governmental entities violated the FWPCA by discharging pollutants. It was not questioned that had the notice requirement been satisfied, the plaintiffs could have maintained a citizen suit against the state defendants. The question

---

**3.** Other claims, not relevant to the present litigation, will not be discussed.

was whether the plaintiffs could raise this claim independent of the citizen suit provision. The Supreme Court reviewed the enforcement mechanisms of the FWPCA and determined that Congress intended that no additional cause of action be implied.

The case at bar is factually quite different from *Sea Clammers*. ALCOSAN alleges the state defendants violated the FWPCA by improper administration of the construction grant program. Although the FWPCA expressly authorizes citizen suits against polluters, there is no comparable express authorization for citizen suits against state agencies charged with administration of the construction grant program. ALCOSAN contends the absence of such an enforcement mechanism mandates the implication of a cause of action.

■ Although ALCOSAN's attempt to distinguish *Sea Clammers* is appealing, it fails to take into account the breadth of the enforcement mechanism provided in the FWPCA and the expansive language in which the decision in *Sea Clammers* is couched. The conduct of state agencies in administering the construction grant program is subject to continual EPA review and approval: EPA must approve the state's priority system and project priority list and the final determination of eligibility for grants lies with EPA. EPA's actions must comply with the FWPCA and its implementing regulations and is subject to judicial review under the citizen suit provisions of the FWPCA. This mechanism is adequate to insure federal and state compliance with the FWPCA.

Further, the expansive language in which the decision in *Sea Clammers* is couched persuades this Court that the Supreme Court meant exactly what it said: "We hold there is no implied right of action under [the FWPCA]...." 453 U.S. at 11, 101 S.Ct. at 2621. The Supreme Court first indicated the scope of its decision by stating that its review was limited to three questions, only the first of which is relevant to

the present case: "whether FWPCA ... impl[ies] a private right of action independent of [its] citizen suit provision, ...." *Id.* After a review of the structure of the FWPCA and its legislative history the Supreme Court concluded "that Congress intended that private remedies in addition to those expressly provided should not be implied." 453 U.S. at 18, 101 S.Ct. at 2625. Had the Supreme Court intended to limit its decision to the facts of the case before it, as ALCOSAN suggests, it could have done so. That it did not suggests that it chose not to so narrowly restrict the applicability of its holding.[4]

Assuming that *Sea Clammers* does not control the matter *sub judice*, this Court would nevertheless refuse to imply a cause of action under the FWPCA. In a decision handed down before *Sea Clammers*, on facts somewhat closer to the case at bar, the United States District Court for the Southern District of New York dismissed FWPCA claims against state defendants stating:

> Here the claim against the state is not that they have violated an effluent standard but that they, in essence, were malfeasant in not properly establishing a[n effluent] standard and moreover, failing to issue any orders to stop ongoing pollution. The FWPCA provides no mechanism for a direct suit in federal court against the state for these actions. The federal law does provide for a citizen suit against EPA for failure to act in accordance with the FWPCA, 33 U.S.C. § 1365(a)(2), and a mechanism by which the EPA must oversee the state program, *see* 33 U.S.C. § 1318.

*Love v. New York State Department of Environmental Conservation,* 529 F.Supp. 832, 840 (S.D.N.Y.1981).

As its back up position ALCOSAN contends that if the Court refuses to imply a cause of action under the FWPCA, the Court can nevertheless grant ALCOSAN declaratory relief. In support of this con-

---

4. Recent Supreme Court decisions refusing to imply private causes of action under federal statutes buttress this Court's conclusion that

*Sea Clammers* is to be read literally. See *e.g.* cases collected at *Hill v. Der,* 521 F.Supp. 1370, 1376 (D.Del.1981).

tention ALCOSAN relies on *DER v. Williamsport Sanitary Authority,* 497 F.Supp. 1173 (M.D.Pa.1980). In that case DER brought an action against a sanitary authority for a judgment declaring that DER was the rightful recipient of a FWPCA grant. The authority counterclaimed for a judgment declaring that the authority should have been the recipient of the grant. The Court found there was federal question jurisdiction and found the authority entitled to funds under the FWPCA. Considering what relief could be granted, the Court determined that the authority had no implied cause of action for damages under the FWPCA, but that declaratory relief was available.

■ The Declaratory Judgment Act is described in a leading treatise as follows:
The operation of the Declaratory Judgment Act is procedural only. By passage of the Act, Congress enlarged the range of remedies available in federal courts but it did not extend their subject matter jurisdiction. Thus, prior to deciding whether to exercise its discretion and allow a declaratory judgment action to be brought, the Court must determine if jurisdiction and venue are proper. There must be an independent basis of jurisdiction, under statutes equally applicable to actions for coercive relief, before a federal court may entertain a declaratory judgment action.
10A C.A. Wright, A.R. Miller and M.K. Kane, Federal Practice and Procedure § 2766 (2d ed. 1983) (footnote omitted). The premise for federal jurisdiction in the *Williamsport Sanitary Authority* case, section 1331, has been rejected in the case at bar. As discussed above, the Court has determined that ALCOSAN has no constitutional rights which it can assert against the state defendants and has no right of action under the FWPCA against the state defendants. Thus, declaratory relief is inappropriate.

For the foregoing reasons Counts 4 and 6–9 will be dismissed. The Court previously determined that the portion of Count 3 which alleges the state defendants have de-prived ALCOSAN of rights secured by the Constitution must be dismissed. Because the FWPCA forecloses a private cause of action under 42 U.S.C. § 1983, the remaining portion of Count 3 which alleges that the state defendants have deprived ALCOSAN of rights secured by the FWPCA in violation of 42 U.S.C. § 1983 will be dismissed. Thus, Count 3 will be dismissed in its entirety. Since the allowance of pendent claims is discretionary and federal claims against the state defendants will be dismissed, Count 5 which alleges a pendent state law claim against the state defendants will also be dismissed.

### The federal defendants

The federal defendants first contend the action must be dismissed because exclusive jurisdiction is in the Court of Claims. The Tucker Act, 28 U.S.C. § 1491, grants exclusive jurisdiction to the Court of Claims to decide claims "against the United States founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, . . . ." District courts have concurrent jurisdiction of claims against the United States for less than $10,000. 28 U.S.C. § 1346(a)(2). The federal defendants contend the prime effort or objective of ALCOSAN is to force the United States to pay grant monies to ALCOSAN under the FWPCA and the claim is therefore within the Tucker Act.

In *City of Manassas Park v. United States,* 633 F.2d 181, 224 Ct.Cl. 515 (1980), cert. denied, 449 U.S. 1035, 101 S.Ct. 611, 66 L.Ed.2d 497 (1981), the Court of Claims reviewed the perimeters of its jurisdictional grant. A sewage authority had brought suit against the United States alleging EPA misinterpreted its regulations thereby causing an increase in the cost of the authority's project. Jurisdiction in the Court of Claims was alleged because of the grant agreement between the authority and EPA and because of the authority's demand for monetary relief. The Court of Claims reviewed its bases of jurisdiction: contract

claims for money and non-contract claims for money. It stated non-contract claims for money

must be in one or the other of two categories. The first is for money illegally exacted, and in Treasury coffers, as, e.g. tax refund claims. The second is when the claimant urges that some specific provision of law commands expressly or by implication the payment of money, upon proof of conditions he is said to meet, e.g., fifth amendment claims or claims by illegally discharged government employees for back pay ... not every instance of misgovernment by a United States agency that is costly to private parties, or local and state interests, generates a valid Tucker Act claim.

633 F.2d at 183. The Court held the authority's claims were for "misgovernment" not within its Tucker Act jurisdiction.

■ The bases of Court of Claims jurisdiction outlined in *City of Manassas Park* provide a backdrop against which ALCOSAN's claims may be examined. ALCOSAN's claims are neither contract claims nor claims for money illegally exacted. The issue is whether ALCOSAN's claims can be properly characterized as urging "that some specific provision of law commands expressly or by implication the payment of money." ALCOSAN alleges the federal defendants failed to disapprove Pennsylvania's priority system and current project priority list and that but for this failure ALCOSAN would have a higher priority ranking. This is a claim for misgovernment beyond the jurisdiction of the Court of Claims.[5]

As outlined above four counts of the complaint are directed against the federal defendants: Counts 1 and 2 allege Constitutional violations, Count 10 alleges FWPCA violations and Count 11 alleges Administrative Procedure Act (APA) violations. The federal defendants move to dismiss the Constitutional claims contending they repeat the FWPCA claims. The federal defendants move to dismiss the FWPCA claims contending the statutorily required notice of suit was not given and the allegations of the complaint fail to state a FWPCA claim. The federal defendants move to dismiss the APA claims contending the FWPCA precludes APA review.

■ The federal defendants concede the Court has jurisdiction over Constitutional claims asserted against them, but contend that ALCOSAN's Constitutional claims repeat its FWPCA claims. The Court agrees that ALCOSAN has alleged no Constitutional claims independent of the FWPCA claims. The motion to dismiss the Constitutional claims is therefore a motion to strike redundant matter under Fed.R. Civ.P. 12(e). Such motions are not favored, 2A J. Moore, Federal Practice § 12.21 (2d ed. 1982), and redundant allegations need not be stricken if their presence in the pleading cannot prejudice the adverse party, *id.* The federal defendants have demonstrated no such prejudice. Accordingly those portions of Counts 1 and 2 which allege that the federal defendants have violated ALCOSAN's Constitutional rights will not be dismissed.

The federal defendants move to dismiss the FWPCA claims on the ground that the statutorily required notice of suit was not given. Section 505(a)(2) of the FWPCA authorizes citizen suits against the Administrator of the EPA for failure to perform a non-discretionary duty. 33 U.S.C. § 1365(a)(2). Section 505(b)(2) provides that no action may be commenced under section 505(a)(2) prior to 60 days after the plaintiff has given notice of such action to the Administrator. 33 U.S.C. § 1365(b)(2). ALCOSAN alleges it mailed a notice of its intent to file this action to the Administrator on November 24, 1982, the same day the complaint was filed. ALCOSAN had previously, on or about October 14, 1982, submitted a written statement to EPA detailing its challenges to Pennsylvania's FY 1983 project priority list; this statement concluded with ALCOSAN's statement that

---

5. *But see Heart of the Valley Metropolitan Sewerage District v. EPA,* 532 F.Supp. 314, 318 (E.D.Wis.1981).

it would pursue federal court remedies if necessary. After receiving ALCOSAN's protest, EPA reaffirmed its prior position upholding DER's actions.

■ The 60 day notice provision, 33 U.S.C. § 1365(b)(2), has been held by the United States Court of Appeals for the Third Circuit not to be a jurisdictional requirement. *Pymatuning Water Shed Citizens for a Hygenic Environment v. Eaton,* 644 F.2d 995, 996 (3d Cir.1981); *Susquehana Valley Alliance v. Three Mile Island Nuclear Reactor,* 619 F.2d 231, 243 (3d Cir.1980), *cert. denied,* 449 U.S. 1096, 101 S.Ct. 893, 66 L.Ed.2d 824 (1981). These cases suggest that notice is to be viewed pragmatically. More than 60 days have passed since the federal defendants received formal notice of ALCOSAN's intent to commence this citizen suit. Since the receipt of this notice, and even before, the federal defendants have remained firm in the defense of their position. The federal defendants have not suggested to the Court how their conduct would have been any different had they received formal notice 60 days before the suit was commenced, or how the absence of such notice has prejudiced them in any manner. Moreover, if the FWPCA claims were dismissed on this ground, the action would be immediately refiled. The interest of all parties and the interest of justice compels a prompt adjudication of this matter.

The federal defendants contend the position of the Third Circuit on the notice requirement has been eroded by the Supreme Court's decision in *Sea Clammers, supra.* Reviewing the enforcement mechanism under the FWPCA to determine if Congress intended an implied cause of action, the Supreme Court noted that the citizen suit provision authorized private persons to sue for injunctions to enforce the statute and that plaintiffs invoking this provision must first comply with specified procedures, including 60 days prior notice to potential defendants. At first blush the statement appears mandatory. However, when read in context, it is apparent that the Supreme Court did not decide the nature of the no-

tice requirement. The plaintiffs in *Sea Clammers* had not given notice to the defendants but had asserted FWPCA claims independent of the citizen suit provision. It was on the question of whether such a cause of action could be implied that the Supreme Court granted review, not on the nature of the notice requirement. Therefore ALCOSAN's FWPCA claims will not be dismissed for ALCOSAN's failure to formally give 60 days prior notice of suit.

■ As a second ground for dismissal of the FWPCA claims, the federal defendants contend the allegations of the complaint fail to state a claim upon which relief may be granted. Count 10 alleges the federal defendants failed to perform a mandatory duty to disapprove Pennsylvania's priority system and project priority list as not in compliance with the FWPCA and its implementing regulations. The federal defendants contend their non-discretionary duty was, at most, to review and act on Pennsylvania's system and list, which was done. They characterize ALCOSAN's allegations as challenging the manner in which this non-discretionary duty was performed, not the failure to perform a non-discretionary duty.

For the purposes of the federal defendants' motion to dismiss the FWPCA claims for failure to state a claim, the well-pleaded material allegations of the complaint are taken as admitted and the complaint should not be dismissed unless it appears to a certainty that the plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim. 2A J. Moore, Federal Practice ¶ 12.08 (2d ed. 1982). This strict test for dismissal is not met and Count 10 will not be dismissed.

The federal defendants move to dismiss the APA claims contending the FWPCA precludes APA review. Count 11 alleges the federal defendants acted in an arbitrary and capricious manner when they approved Pennsylvania's FY 1983 project priority list in violation of the APA, 5 U.S.C. § 701 *et seq.* The APA does not "confer authority to grant relief if any other statute that grants consent to suit expressly or implicit-

ly forbids the relief which is sought." 5 U.S.C. § 702. The federal defendants contend the FWPCA is exclusive and implicitly forbids APA review.

■ The Supreme Court's analysis of the availability of a section 1983 action for violations of the FWPCA in *Sea Clammers, supra,* suggests that an APA action may not be maintained. The Supreme Court first determined that no cause of action could be implied under the FWPCA, then turned to the question of whether the plaintiffs had an express cause of action under 42 U.S.C. § 1983 for violations of the FWPCA. The Court determined the plaintiffs had no such section 1983 remedy because Congress had foreclosed private enforcement of the FWPCA in the FWPCA itself. This result was not inconsistent with the savings clause, 33 U.S.C. § 1365(e), because "the savings claus[e] do[es] not refer at all to a suit for redress of a violation of [this] statute[ ]. . . . 453 U.S. 20 at n. 31, 101 S.Ct. at 2626 n. 31. ˙This analysis is equally applicable to ALCOSAN's APA claim. ALCOSAN alleges the federal defendants acted in an arbitrary and capricious manner in that they failed to comply with the FWPCA and its implementing regulations. This APA claim is not independent of the FWPCA and has been foreclosed by the FWPCA.

*Cape May Greene, Inc. v. Warren,* 698 F.2d 179 (3d Cir.1983) does not compel a contrary conclusion. In that case a land developer challenged EPA's action in imposing conditions on a construction grant in order to restrict development of an area designated as a floodplain. The developer claimed EPA's imposition of conditions to restrict development contravened the Coastal Zone Management Act of 1972, the National Flood Insurance Act of 1968, the National Environmental Policy Act of 1969, and Executive Order 11,988. The Court reviewed EPA's conduct under the APA. The case does not address the question of whether the FWPCA precludes APA review.

Accordingly Count 11 will be dismissed.

*Conclusion*

While the motions to dismiss were under consideration, ALCOSAN filed an amended complaint. By the time the amended complaint was filed, several intervening plaintiffs had adopted, by numbered paragraphs, ALCOSAN's original complaint, one intervening defendant had answered ALCOSAN's original complaint, and several intervening defendants had joined in the original defendants' motions to dismiss the original complaint. To respond to the amended complaint it would have been necessary for the original defendants and the intervening parties to reassess their positions and amend their pleadings as necessary. Because the delay inherent in that process would have been contrary to the interest of justice, the amended complaint was stricken without prejudice to ALCOSAN's right to file a motion for leave to amend its complaint if it should deem it appropriate after disposition of the motions to dismiss.

Although the amended complaint was stricken, the Court has nevertheless considered whether the amendments would have affected the rulings on the motions to dismiss, and has concluded they would not. The amended complaint raised no new legal grounds for relief. Rather, it amended the factual allegations to conform to the evidence offered by ALCOSAN at the hearing on its motion for a preliminary injunction; it withdrew the Constitutional claims against the state defendants; it withdrew the section 1983 claim as a separate count, but added the section 1983 claim to the FWPCA claims; and it rearranged the counts in a more logical order. Thus had the amended complaint not been stricken, the disposition of the motions to dismiss would have remained the same.

All other contentions raised have been considered and are found to be without merit.

The complaints of the intervening plaintiffs, to the extent they adopt, join, or incorporate Counts 1 and 2 as to the state defendants, and Counts 3, 4, 5, 6, 7, 8, 9, 11, and 12, or otherwise set forth claims based

on the legal theories contained in these Counts, will be dismissed.

An appropriate order shall issue.

## ORDER

AND NOW February 17, 1983 in accordance with the foregoing memorandum opinion, IT IS HEREBY ORDERED that

1) with respect to the complaint filed by ALCOSAN, Counts 1 and 2 are dismissed as to the state defendants and Counts 3, 4, 5, 6, 7, 8, 9, 11 and 12 are dismissed;

2) with respect to the intervening plaintiffs, to the extent they have adopted, joined, or incorporated the above enumerated Counts, or otherwise set forth claims based on the legal theories contained in the above enumerated Counts, said claims are dismissed;

IT IS FURTHER ORDERED that all motions to supplement the hearing on ALCOSAN's motion for a preliminary injunction or requests to that effect are denied without prejudice to renewal, and that any party desiring to supplement the hearing shall file a motion to that effect within ten (10) days of the date of this order.